## Breckinridge *vs* Moore, &c.

CHANCERY.

ERROR TO THE FAYETTE CIRCUIT.

*Vendor and vendee. Champerty. Bills of exchange. Comity.*

Case 156.

JUDGE BRECK delivered the opinion of the Court.

June 1.

Bill of complainant.

In January, 1840, Breckinridge executed his note to John Steele for one thousand dollars, payable to said Steele or order on the 1st January, 1841. The note was dated at Nashville and signed by Breckinridge as being of Fayette county, Kentucky.

In April, 1840, the note was assigned by Steele to Moore, who obtained judgment thereon against Breckinridge, in the Fayette Circuit Court.

Breckinridge then exhibited his bill against Moore and Steele and obtained an injunction against the judgment. He alledges in his bill, that the note in question and two blooded mares, estimated at $500, were given in consideration of the purchase by him of a tract of land of Steele; that the trade was made, mares delivered, and note executed in Nashville, Tennessee, and solely upon the representations of Steele in reference to the land. The land was represented by him as lying in Boone county, Kentucky, near the Big Bone Lick, and containing about 4500 acres, and entered in the name of Eggleston and Todd, and adjoining the lands of Thomas Connely, and the grant to Eggleston and Todd referred to for the boundaries; that he had derived title to the land through a deed made to him by the Clerk of the Circuit Court of Hopkins county, Kentucky, as Commissioner. The foregoing representations being part of the recitals in the deed made by Steele to Breckinridge, at the time of the trade. It is further alledged by Breckinridge, that Steele represented he had been on the land a few years before; that he had a regular chain of title from Eggleston and Todd, and had also peacable possession of the land. He charges that the representations thus made by

Steele, were false and fraudulent; that he had no title to any portion of the land patented to Eggleston and Todd; that the deed from the Commissioner did not even purport to convey any portion of the land in the grant of Eggleston and Todd but 2000 acres in the name of Richard Eggleston; that the grant to Eggleston and Todd was to Edward Eggleston and Robert Todd; that there was no grant to Richard Eggleston, and he had owned no land as described in the deed of the Commissioner to Steele; that the claim of Eggleston and Todd was covered by adverse claims and had long been so held, except a small portion held by their heirs; that so far as related to the land in the bounds of Eggleston and Todd's grant, the deed from Steele was utterly void; that Steele was insolvent and resided in Tennessee; that he had assigned the note to Moore, Broaddus & Co. who in the name of R. S. Moore, the defendant, and one of the firm, had recovered the judgment in question; that all the alledged facts were in the knowledge of Steele and Moore. It is also alledged by Breckinridge, that he had never seen the land—knew nothing in relation to it, or of the title of Steele, except from his representation. He prays a perpetual injunction and a rescission of his contract with Steele, and brings into Court and tenders to Steele and Moore the deed made to him by the former.

Steele and Moore answered, both denying the material allegations of fraud, and both rely, as evidence of what the representations were by Steele, as to his title and as to the particulars of the trade between Steele and complainant, upon an article of agreement, which Steele states, "to save a law suit and all misunderstanding, he was induced to write and have signed," and which they file as an exhibit, and pray to have read as evidence. Steele denies that he ever saw or was upon the land sold to complainant. Moore states that the note in contest was *traded* to Moore, Broaddus & Co. by Steele; that he was himself a member of the firm, and that the assignment was filled up in his name to facilitate the collection. He denies that it was known by him or the other members of the firm, when they traded for the note, for what consideration it was executed, but insists that it

was traded for in good faith, for value received, and was a
fair business transaction. It is not controverted that the
note was executed by the complainant in consideration of
the land sold by Steele to him.

Amended answers are subsequently filed by each of
the defendants, in which they aver that the whole trade
and transaction, from which the note in contest originated,
took place in the State of Tennessee, where the defen-
dants and all the members of the firm of Moore, Broad-
dus & Co. then and still reside. Defendant, Moore, de-
nies that he or said firm had notice of any defence to the
note, or objection to its payment on the part of complain-
ant, and alledges "that the note was negotiated to him or
his firm in the State of Tennessee, and that by the stat-
ute and laws of Tennessee the said negotiation and in-
dorsement of said note gave it the effect of a bill of ex-
change or other mercantile instrument, and prevent and
bar all the defence set up by complainant, as against the
present holder thereof, as by said laws he will be able
and ready to show."

The Court dissolved complainant's injunction and dis-
missed his bill, and by writ of error, he has brought the
case before this Court for revision.

The first question obviously arising for consideration
is, whether the transaction between the defendant, Steele,
and complainant, in the sale of the land and procuring
the note in contest, was or not, on the part of the former,
fraudulent, and such as to render the note void? The deed
from Steele to complainant; the note and the article of
agreement, referred to by the defendants, all bear date on
the same day, and it is admitted that the deed and arti-
cle of agreement, as also the answer of defendant, Steele,
are all in his hand writing. The deed is drawn in the
usual form, and recites, "that for and in consideration of
the sum of $1500, to me in hand paid, I have this day
bargained and sold, and by these presents do bargain,
sell and convey unto the said Breckinridge, all that tract
or parcel of land, situate and lying in Boone county, near
the Big Bone Lick, Kentucky, and containing about four
thousand five hundred acres, be the same more or less, and
entered in the name of Eggleston and Todd, and adjoin-

BRECKINRIDGE
vs
MOORE &c.

Amended an-
swers.

Decree of the
Circuit Court.

Questions for
consideration.

ing the lands of Thomas Connely and others, and for the calls of said tract of land I refer the said Breckinridge to the grant registered at Frankfort, Kentucky, in the name of Eggleston and Todd, which beginning and call will correspond to my title, which I now convey to him."

The deed then recites that said tract of land was purchased by one Neil McLean, and after passing through different persons, was sold under a decree of the Hopkins Circuit Court, Kentucky, with other tracts, by a Commissioner, and purchased by him, the defendant, Steele, to whom the Commissioner conveyed the land sold in Boone county, " and for as much land as was sold according to said deed, I hereby sell and convey to said Breckinridge."

We have not deemed it necessary to state all the recitals in the deed, but only such as will render apparent the land sold and the character of the deed. It is declared to be a special deed; that he only sells his special title, and *is* to warrant against all persons claiming under him, but against no other claims.

The record of the Chancery suit in the Hopkins Circuit Court, in which the decree referred to in the foregoing deed was rendered, together with the Commissioner's deed to Steele, are made exhibits in this case. From an inspection of that record, it results, that in 1818, McLean purchased, for the *direct tax,* two thousand acres of land, on Big Bone, in Boone county, returned and sold as the claim of Richard Eggleston, and for which McLean obtained the collector's deed in 1821.

There was no other land in Boone county named in said suit or decreed to be sold or conveyed to defendant, Steele, except the 2000 acres of Richard Eggleston, so purchased by McLean. The Commissioner's deed to Steele was made in 1832. It is evident then that the recitals in Steele's deed to complainant, and which were written by the said Steele himself, are a gross misrepresentation of his claim as derived from the Commissioner's deed, not only as to its extent but character. But again—the grant to Eggleston and Todd is an exhibit in this case, from which it appears that Edward Eggleston is the patentee, instead of Richard; that it contains four thousand seven hundred acres, and the proof is that the land lies in the

county of Boone, a few miles from Big Boone creek and adjoining a survey of Thomas Connely.

The tract described in the deed from Steele to complainant corresponds, therefore, with the description of the land embraced in this grant and with the proof of its location ; and as the proof is that there was no claim of land in *Boone County, on Big Bone,* in the name of Richard Eggleston, it follows that Steele had no title or color of title to any portion of the land, which, by his deed he sold and conveyed to complainant, unless this claim of Richard Eggleston may be presumed in some way to be connected with, or as being part of the grant to Eggleston and Todd. In his deed, letters to the complainant upon the subject, and answers, he seems to regard it in that light. But although we should indulge in a charitable presumption to that effect, still the misrepresentation in the deed would be palpable, as he sells the whole tract in the grant to Eggleston and Todd, and as containing forty-five hundred acres, when his title through the Commissioner only calls for two thousand acres. He does not intimate in his deed that there was only two thousand acres, or that there was less than four thousand five hundred acres, except after stating his purchase from the Commissioner, and conveying clearly the idea, by every thing in the deed preceding, that he purchased the whole claim of Eggleston and Todd, he says, "and for as much land as was sold according to said deed," alluding to the Commissioner's deed, "I hereby sell and convey to said Breckinridge." This limitation, thrown in in this delusive manner, is not, we think, calculated in the slightest degree, to relieve him. A fair construction of his deed is, that he had purchased the claim of Eggleston and Todd, which he sold and conveyed to Breckinridge : but, even if it be assumed, as contended by his censel, that Richard Eggleston was the heir of Edward, and had two thousand acres in the claim of Eggleston and Todd, and that Steele only sold that much to Breckinridge, still he will stand convicted, by the facts in the case, of fraud. Breckinridge alledges, that among other things, Steele represented to him, before the trade, that he had seen and been upon the land. He does not, in his answer,

directly deny the allegation, but still states that he had never seen nor been upon the land. It is unequivocally proved by two witnesses, that he had seen the land a year or two before he sold to Breckinridge, and if not upon it, he was at the house of the witnesses, which was within forty yards of the claim of Eggleston and Tood; that the land, and lines and corners, were pointed out to him by the witnesses, who informed him, at the same time, that the claim, except a small portion, was covered by adverse titles, under which it had been possessed and held for more than twenty, and in some instances, more than thirty years; that the small portion not thus held and covered by adversary claims, was held under the claim of Eggleston and Todd; that these facts were communicated at the time to Steele. The testimony of one of these witnesses proves, that he had known the land for forty years, and that no portion of it had ever been claimed or possessed under the purchase by McLean, or under the claim of defendant, Steele, except that at the time alluded to, when said Steele was at witness' house, he claimed the land. These facts, so fatal to the title of Steele, and which he no where intimates that he communicated to Breckinridge, but which he suppressed and concealed, render the transaction, on his part, fraudulent, unless he is protected by the "article of agreement," upon which the defendants rely, and which defendant, Steele, says "he was induced to write and have signed to save a law suit and all misunderstanding." This instrument is in the hand writing of Steele; was executed after the deed, but on the same day, and is signed by him and Breckinridge. The possession was retained by Steele. It recites "that he had that day sold and conveyed to Breckinridge all his title and claim to the following described land, viz: all that tract or parcel of land, lying in Boone county, Kentucky, and near the Big Bone Lick, and adjoining the lands of Thos. Connely and others. Said Steele claims said tract of land, and represents the following title." He then states that McLean purchased it on speculation, when sold for the direct tax, and after following it minutely through divers persons, that he had brought suit in Hopkins county,

Kentucky, had it sold, and became himself the purchaser, and obtained a deed; that he had sold the land to Breckinridge, who had agreed to take it on his title, without warranty, as he had taken Breckinridge's two blooded mares without warranty. In this instrument nothing is said of Eggleston or of Eggleston and Todd. It is silent as to the number of acres—nor does it contain the important facts, that he had seen the land, and that the whole tract was and had been for many years, held adversely to his claim. Taking the whole instrument together, we are clearly of opinion, that it can have no bearing or influence upon this case favorable to the defendants; that it does not improve the character of the transaction.

The conclusion to which we arrive, then is, that the claim sold by defendant, Steele, to complainant, was at the time worthless, and that Steele was apprized of the fact; that he misrepresented his claim, and did not disclose material facts in his knowledge in relation to it; that for these reasons the whole transaction is fraudulent and void.

A vendor is bound to disclose to his vendee all material facts in his knowledge in relation to the thing sold; failing to do so or in misrepresenting, he is guilty of fraud.

The transaction is, however, void for another reason. It was a clear and palpable violation of the law of Kentucky against champerty, as the land at the time of the sale was adversely held.

A bond given as the consideration of land, adversely held at the time of sale, is not collectable, being against the law made to prevent champerty.

But the defendant, Moore, contends that he is not subject to the equity thus established against his co-defendant, and whether he has or not shown himself exempt from its effect is the important question remaining for consideration.

It is conceded that the whole transaction took place in the State of Tennessee, and therefore, it is contended that the note in contest was payable in Tennessee, as no particular place of payment is fixed by the parties; and that the rights of the holder of the note depend upon the laws of that State. Assuming for the present, that these positions are tenable, it devolves upon the defendant, first to establish what the laws of Tennesse are in reference to this note, or to notes of similar import. This may be done in the mode prescribed by Congress or according to a statute of Kentucky. Neither mode has been strictly

pursued: but we find in the record what the Secretary of State of the Commonwealth of Kentucky certifies to be truly copied from a printed book on file in his office, entitled, ''a compilation of the statutes of Tennessee of a general nature,'' &c. Had this book purported to have been ''printed under the authority'' of the State of Tennessee, it would then have been evidence according to the statute of Kentucky: (1 *Stat. Law*, 187 ; 7 *Monroe*, 584:) but as the book is certified to be on file in the office of the Secretary of State, it may be presumed to have been officially received from the Executive of Tennessee; and as it does not appear that any exception was taken to the copy in the Court below, we are disposed to regard it as evidence of the law of Tennessee.

Law of Tennessee in regard to notes payable 'to order.'

Under this law the note before us, which is made payable to the order of John Steele, is elevated to the dignity of a bill of exchange.

To make a bill of exchange, which was obtained fraudulently, binding on the drawer in the hands of a purchaser, it must appear to have been obtained in the ordinary course of business, "upon some present consideration, paid in money or property, some subsisting debt satisfied, or some responsibility incurred in consequence of the transfer."

Regarding the note then as entitled, from its date, to the character of a bill of exchange, does it shield the defendant, Moore, from the effect of the equity established against Steele. As the complainant alledges and proves that the note was fraudulently obtained, and charges that the fraud was within the knowledge of the defendant, Moore, to protect himself he must show that the note was taken by him in the usual course of trade, and for a fair and valuable consideration: (*Chitty on Bills*, 87; 3 *Kent's Com*. 81;) *Early* vs *McCart*, (2 *Dana*, 416; 10 *Wendall*, 86; 9 *Ibid*, 170; 20 *Johnson*, 637; *Ibid*, 102.) The rule is also laid down in the authorities referred to, that the valuable consideration is not merely such as would have been good between the parties, the assignor and assignee in this case, but that there ''must have been some present consideration paid in money or property; some subsisting debt satisfied, or some new responsibility incurred in consequence of the transfer.'' Has the defendant, Moore, brought himself within this rule? We think not. He states, in general terms, in his answer, that he *traded for the note in good faith* and for a valuable consideration. He takes the testimony of a single witness upon the subject of the transfer of the note. This witness was a Clerk in the employ of Moore, Broad-

dus & Co. when they negotiated for it, and may be presumed to have known what consideration passed, and all the particulars in relation to the trade.    He says he knows that Moore, Broaddus & Co. traded for the note; that "it was for a fair and valuable consideration, and that they had no notice of any defence to the note."    Again, he says, "the sale of the note was made for a full consideration, as I believe; I know they traded for it in good faith."    This is all the evidence as to the negotiation and a *valuable consideration* in reference to this note.    The defendant should have proved what the consideration was and the particulars of the trade, so that the Court could have determined whether the assignee obtained the note in good faith, and whether the consideration was fair and valuable, and such as would protect him against the equity of complainant against Steele.    He had notice before suit was brought, that the complainant relied that the note was obtained and put in circulation by fraud.    He is, therefore, without apology for failing to prove the actual consideration paid, and all the circumstances attending the purchase of said note, and more especially as it is not suggested that the proof was not in his power.

But  there is  still  another view of the case in which the defendant, Moore, must be regarded as subject to the equity set up against the defendant, Steele.    The transaction between complainant and Steele, it is true, took place in the State of Tennessee, but it was for the sale of a tract of land  in  the State of Kentucky.    Does the *lex loci contractus* or the *lex rei sitae* govern this contract? The rule is settled, that real contracts, or contracts in relation to land, must be governed by the *lex rei sitae*: (*Story's Con. Law*, 301–2.)    The note in this case is part of the contract and should be  governed  by  the laws of Kentucky in relation to sales of land, more especially as the holder seeks the aid of those laws for its collection.

The whole transaction between complainant and Steele was in direct violation of the statutory and established law of Kentucky.    The contract, as we have seen, was in violation of our statute against champerty.    Nor were the parties, as to its violation, in *pari delicto*.    Steele knew that the land was held adversely.    The complain-

BRECKINRIDGE
*vs*
MOORE &c.

Contracts for the sale of land in Kentucky, tho' taking place in another state, are governed by the laws of Kentucky, especially when by the courts of Kentucky the consideration is sought to be recovered.

A purchaser of land, adversely held, not knowing of such adversary holding is not in *pari delicto*.

ant was ignorant of the fact. But contracts violating the laws of a country where they are sought to be enforced are deemed nullities, though valid by the law of the place where made: (*Story's Con. Laws*, 203-4-5.) No nation is bound to recognize or enforce any contracts which are injurious to their own interests, or to those of their own subjects. In this case we are asked to enforce the collection of this note, constituting part of a contract made in violation of our own laws. We apprehend no case can be found where such aid and *comity* have been extended.

In this view of the case, the consideration paid by defendant, Moore, becomes matter of no importance.

In view of the whole case, we are clearly of opinion that the decree is erroneous.

The decree is, therefore, reversed, and the cause remanded, with directions to perpetuate complainant's injunction, and to render a decree against the defendant, Steele, for the $500 for the two mares, and to rescind and declare void the contract in relation to the purchase of the land.

*Pindell* for plaintiff: *Robinson & Johnson* for defendants.

*June 8.*                    PETITION FOR A RE-HEARING,

By Mr. M. C. Johnson.

IT is with reluctance that at this late period of the term I feel bound to pray a re-hearing in this suit. The Court seems to have carefully examined the record, and their opinion is expressed as clear and free of doubt, yet not being convinced by the reasoning, it is my duty, in all proper modes allowed by the rules of law, to resist the decision.

I will not again present my views on the alledged fraud of Steele in making the contract. But taking as true, that there was fraud, and was champerty, I contend that Moore stands unaffected by it.

Before, however, going into that branch of the subject, I would call the attention of the Court to a defect of parties. It appears from the bill of Breckinridge, the answer of Moore and the proof, that the note and judgment

rendered upon it, belonged to Moore, Broaddus & Co. and that it was put in the name of Moore for the convenience of suing. Moore, Broaddus & Co. are consequently interested as the real owners of the note or claim, and should have been made parties by Breckinridge. He relies on the necessity of their being made parties in his assignment of errors and brief, and although no cross errors are assigned, it is the practice and duty of the Court, upon a reversal, to notice all the errors which exist in the record; and it is erroneous to enter a final decree, as directed in the mandate, in the absence of such necessary parties: (3 *J. J. Marshall*, 528; *Ibid*, 533.)

It is conceded, in the opinion delivered, that the note in question, by the general principles of comity, would be made a bill of exchange under the law of Tennessee, being made in Tennessee and the payee and holder residing there: but it is said that as this note arose from a sale of land in Kentucky, the general principle does not apply, and it is governed by the laws of Kentucky. *Story's Con. of Laws*, 300–2, is referred to, as sustaining this principle. With respect to the Court, I conceive the principles laid down by *Story* are misconceived. In a subsequent part of his work, chapter X, page 358, 391, he treats fully on the subject of real estate, and he lays down the correct proposition that the acquisition, transfer and loss of real estate, is governed by the laws of the country where situate, and that contracts for passing or binding real estate must conform to those laws or be invalid. But in the present case, the contract for transferring the title was executed; the deed was made; the consideration is recited to have been paid, and the note is executed and received as a payment—is this note, thus arising from an executed transfer of land, to be considered as partaking of the realty, and not governed by the general rules in regard to notes or other negotiable instruments? The reasons of the rules relating to real estate are obvious principles of policy, requiring each nation or State to maintain its entire sovereignty over its soil, its mode of acquisition, transfer and descent, but no such policy can affect a mere personal debt. In no part of his work does *Story* suggest any distinction between

negotiable instruments and other debts, arising from a sale of land and those arising from any other consideration. All *debts* are by him classed as personal. They are so by the common law. If the holder of this note had sought to enforce a lien upon the real estate sold, the existance and validity of such lien would, I admit, depend on the laws of Kentucky and not those of Tennessee. According to my view, the nature, legal effect and validity of the note, as a debt, would be governed by the laws of Tennessee; the lien for its payment by those of Kentucky. And if, by the laws of Tennessee, the note is a bill of exchange, and by the laws of Kentucky no lien exists where a negotiable instrument is given, then the combined operation of the laws of the two States would destroy the lien: see on that subject *Story's Con.* 302, *sections* 366-7, where the effect of Scotch heritable bonds, and the proceeds of entailed estates, sold for land tax, are considered.

In no proper sense of the term do I consider a negotiable instrument or promissory note, containing no reference to the land, and only connected with land, by the conveyance of land being its consideration, as forming a part of the contract. In cases under our statute of frauds, the promise to pay the money is not treated as forming a part of the agreement, and may be merely by parol, and still be good.

The Court seems to lay some stress upon the sale of the land, being prohibited by our laws, and the consequent propriety of our laws refusing to recognize the principles of comity in regard to such a contract. The general principle laid down by the Court is undoubtedly correct, but I contend it is not properly applied in this instance. The laws of this State will not permit the sale of pretended titles, in violation of the laws of champerty, because made in another State, where no such prohibition exists. But suppose a champertous sale made in Kentucky, and a *bill of exchange* given for the price, and passed to an innocent holder for value, would the bill be void in that case? If so, then I do not deny that this note would be. This note being made in Tennessee, is to be considered as if its form were a bill of exchange.

There is no principle in our laws prohibiting the making of bills of exchange. If there were such law, and the note were sued on here, it would be treated simply as a note. There is no principle in the laws of Kentucky forbidding the making of a bill of exchange by using the form of a note, as may be done in most of the States of this Union. If a bill of exchange, made in regular form in Kentucky, upon a champertous sale of land in Kentucky, may, under our laws, be valid, what sound reason can be given preventing a bill of exchange, made in Tennessee, according to the forms used in that State, being likewise valid. There is no principle of policy requiring us to be more strict upon contracts made out of the State, against the spirit of our laws, than upon contracts made at home. In my opinion, the Court confounded the rules relating to construction and nature of the contract with those relating to its validity. While the construction of contracts, as a matter of right, should be governed by the law of the place where made, their validity elsewhere depends upon mere comity. Persons contracting in one State, where certain instruments have a certain defined meaning and import, are, upon principles of justice and right, supposed to have incorporated that meaning and import in the instrument used. But the legal meaning and import being thus fixed by the law of the place of the contract, its validity in other States depends upon the mere comity of that State. To make this note other than a bill of exchange is to violate its legal meaning. It is made, by the law of Tennessee, a bill of exchange, as perfectly as if it had that form.

I do not understand the Court as saying that a regular bill of exchange, made in Kentucky, upon a champertous deed, would not be good in the hands of an innocent holder for value.

But the opinion states, that even were this to be treated as a bill of exchange, being void between the original parties on account of fraud and champerty, Moore has not placed himself in a better position, not having shown himself to be a *bona fide* holder, for *valuable consideration*, without notice.

I find it laid down, that where the acceptor of a bill of exchange proves fraud or illegal consideration the holder must prove himself to be an innocent holder, without notice, for full value.   In this case judgment was rendered at law and Breckinridge filed his bill alledging fraud on the part of Steele; the sale of the note to Moore, Broaddus & Co. and *that they had notice of the fraud and want of consideration in the note:* but he no where alledges or suggests that Moore, Broaddus & Co. did not give full value for the note.   In the case of *Early* vs *McCart,* (2 *Dana,* 416,) cited by the Court, it was decided that it was not sufficient for the defendant to alledge fraud, as a defence against a bill of exchange, but the special plea must, in addition, charge either that the holder had notice, or did not give valuable consideration for it.   This bill in chancery should at least have the requisites of a special plea.   In common fairness it should alledge distinctly the grounds of attack, and I contend it has done so. It alledged fraud by Steele and knowledge of it by Moore, Broaddus & Co.   These allegations were sufficient, and are distinctly denied by Moore, and the Court does not intimate a defect in Moore's case, upon the only matter put in issue.   Looking at the bill of Breckinridge, would not any one consider the question of value as conceded by him, and that he had placed himself on the question of notice?   In common fairness, the person should be notified of what is required of him.   If Breckinridge desired to know the consideration, why could he not have notified Moore of his desire, by amended bill or otherwise.   I do not think any one can really doubt that Moore, Broaddus & Co. *did give full value for it.   They say so on oath;* they prove it by a witness; *it is sworn to by* Steele.   He also states that it was traded for long before it was due, and had no notice of any defence to it, nor did he know the consideration for it.   I am then wholly unable to perceive the grounds upon which the Court expresses the opinion that Moore is *without apology* in not proving what consideration he gave for the note.   The consideration of the assignment had never been questioned.   At common law, where the plea of non-assumpsit puts in issue every thing, and proof of fraud is held sufficient to put the

holder on the proof of his being an innocent holder, for full value, the practice of the Courts require the defendant to notify the plaintiff before trial, that he will be required to prove the consideration: (*Chitty on Bills,* 58, 69, 400, 401.) When a special plea is drawn, it must alledge the want of value, or holder had notice. In chancery, equal fairness should prevail and the holder required to prove what the complainant contests. In this Court, for the first time, did I, as lawyer, hear that the question of consideration was insufficiently presented by Moore. To present the question here, for the first time, when no question was ever raised concerning it below, does certainly resemble the trap system of practice, rather than the plain and honest modes of controversy. In the absence of all impeachment of the consideration, I contend that so far from Moore being "without apology" for not proving more concerning the consideration, that he showed over caution in not only stating in his answer but also proving by a witness that valuable consideration was given for it.

So far as hardship is concerned, Moore, Broaddus & Co. are the real innocent sufferers. Whether they succeed or not the note is worthless; Breckinridge and his surety in the injunction bond being both hopelessly insolvent, and the only real question being whether Moore, the only solvent man in the whole concern, shall be mulct into one or two hundred dollars of costs.

All of which is submitted.

                              M. C. JOHNSON.

### RESPONSE,                                    *June 9.*

#### By Judge Breck.

THE petition for a re-hearing has been attentively examined and considered. It does not satisfy us that the other members of the firm of Moore, Broaddus & Co. were necessary parties. No decree was sought against them. Moore was the legal proprietor of the note, and was so constituted, according to his answer, for the very purpose of rendering it unnecessary that the other members of the firm should be parties to any controversy for its collection.

Moore, as well by the assignment as by being a member of the firm, had a right to control and dispose of the note as he pleased. The same defence could be made, whether the other members of the firm were parties or not, and they were equally concluded as if made parties. And as the Court ought not to have reversed the decree at the instance of either party, because the other members of the firm were not brought before the Court, so we deem it unnecessary to provide, upon the return of the cause, that they should be made parties.

Moore states in his answer, that he was informed, before judgment at law was obtained upon the note, that Breckinridge contended, and would rely, that the note had been obtained by fraud. Breckinridge alledges fraud in his bill against Steele, and Moore, Broaddus & Co. and establishes his equity against Steele. According to the laws of Kentucky, that equity is equally available against Moore as against Steele. The *onus* is thus thrown upon Moore, to show that he ought not to be affected by the conceded equity against Steele. It is then his duty to apprize Breckinridge of the ground upon which he claims exemption. It was for this purpose it became necessary, and he filed his amended answer, insisting that in his hands the note was entitled to the character of a bill of exchange, which he had obtained "in the regular course of business, and for a fair and valuable consideration," and without notice of the alledged fraud. This was his plea, and which, if sustained, would exempt him from the equity existing against Steele. We think he failed in the requisite proof to sustain it. The note, so far as the legal controversy between the parties was concerned, never appeared in the character of a bill of exchange, till it was relied upon by Moore in his amended answer, that it was entitled to that dignity, nor indeed even then ; it was not till a copy of the law of Tennessee was produced and established. The note at that time stood condemned as having been obtained by fraud.

It may, therefore, be well questioned, whether *any* allegation in Breckinridge's bill of fraud as against Moore, or that he had not paid a valuable consideration for the note, was necessary.

In this branch of the opinion, therefore, our views are unchanged, as they are also upon the remaining point, which will be very briefly noticed.

The doctrine is settled, "that a bill of exchange or note, although in the hands of an innocent indorser, for a valuable consideration, is void when the consideration in the instrument is for money won at play, or it be given for a usurious debt. The English statutes against usury and gaming, and which have been adopted generally throughout the United States, are peremptory, and make the bill or note absolutely void." This is the language of Chancellor Kent—and he adds, "the same rule would of course apply to every case in which the contract is by statute declared void.

The note in this case is part of a contract, made in violation of the champerty laws of Kentucky, which declare the contract void; and conceding that in all respects it is entitled to the character of a bill of exchange, still we are of opinion it should be placed upon no better footing than a bill of exchange, when the consideration was usury or money won at play.

Besides, upon the assumption, to which we still adhere, that the note constituted a part of a contract in violation of the laws of Kentucky, upon that ground alone, we are of opinion that the holder, whether innocent or not, is not entitled to the aid of our laws for its collection.

Wherefore, the petition is overruled.